## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | |
| v. | Criminal Action Nos. 98-71-1, -6 (BAH) |
| | |
| BERNARD JOHNSON, *et al.* | Judge Beryl A. Howell |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

Petitioners Thomas Fields and Bernard Johnson are co-defendants convicted in 1999 on dozens of charges—40 for Fields and 16 for Johnson—arising from violent kidnapping, rape, attempted murder, conspiracy to participate in a Racketeer Influenced Corrupt Organization ("RICO"), and various drug- and gun-related misdeeds stretching across years of their involvement in the same gang throughout the 1990s.  After their convictions at a three-month jury trial, Fields was sentenced to imprisonment for life plus 105 years, and Johnson to 49 years and four months.  They both now seek to vacate their sentences via motions, under 28 U.S.C. § 2255.

In one set of motions, Fields and Johnson each challenge their convictions for using and carrying a firearm during a "crime of violence," under 18 U.S.C. § 924(c).  Both defendants challenge their two § 924(c) convictions, in Counts 37 and 38, for use of a firearm in connection with two separate instances of violence, namely, kidnapping, in violation of 18 U.S.C. § 1201, and Maryland assault with intent to murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(3), (a)(5).  Johnson Supp. Mot. to Vacate ("Johnson Supp. Mot.") at 1, ECF No. 481; Fields Supp. Mot. to Vacate Based on *Johnson* and *Davis* ("Fields Supp. *Johnson*/*Davis* Mot.") at 1, 5, ECF No. 482.  In addition, Fields also challenges his four other § 924(c) convictions, in

1

Counts 34, 40, 43, and 44, which are predicated on four separate instances of D.C. assault with intent to kill while armed in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(3), (a)(5). *Id.*

In a second § 2255 motion, Fields seeks vacatur of his two life sentences without parole, imposed for his convictions for RICO conspiracy to commit armed kidnapping, in violation of 18 U.S.C. § 1962(d) (Count 3), and kidnapping, in violation of 18 U.S.C. § 1201(a) (Count 12). Fields Supp. Mot. to Vacate Based on *Graham* and *Miller* ("Fields Supp. *Graham/Miller* Mot.") at 1, 5, ECF No. 483.

Defendants are correct that one of their predicate offenses—namely, kidnapping, in violation of 18 U.S.C. § 1201(a)—no longer qualifies as a "crime of violence" to support their § 924(c) convictions under the intervening Supreme Court decisions in *Johnson v. United States*, 576 U.S. 591 (2015), and *United States v. Davis*, 139 S. Ct. 2319 (2019), and so their convictions and sentences on Count 37 must be vacated.  Their remaining challenges fail: all the other § 924(c) convictions at issue are predicated on offenses that still qualify as crimes of violence, and Fields's life sentences, imposed for crimes he committed at age 22, remain valid despite the Supreme Court's intervening decisions regarding the treatment of juvenile defendants.

## I.    BACKGROUND

Summarized below is factual background regarding petitioners' offense conduct pertinent to resolution of their instant collateral challenges, drawn largely from defendants' original sentencing and resentencing in 1999 and 2001, respectively, followed by an overview of the procedural history.

### A.     Factual Background

Beginning in the 1980s, Thomas Fields, then a teenager known to his associates as "Woozie," joined a group known as the "L Street Crew," selling crack cocaine under the leadership of Fields's cousin, Donnell Burroughs, in Southwest D.C.  Fields Presentence Investigation Report ("Fields PSR") ¶ 43.[1]  After Burroughs was shot and killed in 1990, Fields took over the leadership role himself, supplying his associates with crack cocaine and other drugs to sell throughout Southwest D.C.  *Id.* ¶¶ 43–49.  At that point, Fields's cousin and, ultimately, his co-defendant, Bernard Johnson, known as "Tadpole," joined the gang.  *Id.* ¶ 44.  Meanwhile, tensions grew between the L Street Crew and a rival drug gang, later known as the "K Street Crew," run by Vincent "Vito" Hill.  *Id.* ¶¶ 50–55.  Fields believed the K Street Crew was behind Burroughs's murder, leading to several shootings and other acts of retaliatory violence that reached a fever pitch in the mid-1990s, as set out below.  *Id.*

#### 1.     *Shooting of Vito Hill*

In July of 1996, following the murder at Fields's suggestion of one of Hill's close associates, the L Street Crew conferred on how to avoid retaliation from Hill's gang.  *Id.* ¶¶ 56–58.  Fields instructed that killing Hill should be their next move, as a peremptory strike to leave the rival gang incapacitated and without a leader.  *Id.* ¶ 58.  Plans for Fields and his associates to kill Hill themselves were quickly abandoned, as the group reasoned that Hill would not allow them, as known enemies, to get close enough to him to carry out the execution.  *Id.* ¶ 59.  Fields ultimately decided to pay Eric Gordon, an acquaintance of one of the L Street Crew members

---

[1]      At sentencing, Judge Thomas Jackson, who presided over defendants' jury trial, adopted the findings of fact contained in the Fields PSR ¶¶ 43–142, as properly "summariz[ing] the trial testimony and other evidence" presented at trial.  *See* Fields Findings of Fact and Conclusions of Law ¶ 2, EFC No. 244.

and someone whom Hill did not already know, to commit the murder on his instructions.  *Id.*
¶¶ 60, 62.

After L Street Crew members pointed out his target, Gordon approached Hill under the
pretense of wanting to buy marijuana, then pulled out a pistol and shot him in the chest at close
range.  *Id.* ¶ 61.  The gun jammed after the first shot—leaving Hill wounded but alive—and
Gordon was forced to flee before he could finish the job.  *Id.*  Gordon met up with Fields, who
begrudgingly paid him for the attempted murder, and Gordon then became a regular member of
the L Street Crew.  *Id.* ¶ 62.

### 2.      *Kidnapping, Gang-rape, and Shooting of K.D.*

A month later, on August 25, 1996, in apparent retaliation for Hill's shooting, Gordon
and Fields's young brother were shot repeatedly as they stood outside Fields's house.  *Id.* ¶ 63.
Fields informed the L Street crew members that K Street Crew member William "Draper"
Sweeney was to blame, and that Gordon's girlfriend, K.D., must have given Draper their
location.  *Id.* ¶¶ 63–64.

The next day, August 26, 1996, Fields and his crew exacted revenge.  Fields had his gang
members lure K.D. to his house on the pretense that Fields would take her to the hospital to visit
the wounded Gordon.  *Id.* ¶ 65.  Upon her arrival, K.D. was forced at gunpoint into an upstairs
bedroom, where Fields, Johnson, and several other members of the gang were waiting for her,
several armed with additional guns.  *Id.*  Over the next several hours, Fields, Johnson, and the
others repeatedly raped, beat, and threatened to kill K.D.  *Id.* ¶¶ 65–66.  Fields called up other
gang members to laugh about the ongoing gang-rape and to invite them to join in; various other
men came to the house throughout the day at his invitation.  *Id.* ¶ 66. Eventually, Fields directed
that K.D. be placed in the shower so the men could get rid of some of the evidence, and Johnson

4

forced her at gunpoint to clean herself after each series of rapes; Fields also instructed the others to handcuff her as the brutalization continued.  *Id.* ¶ 67.  As the day wore on, the men came to a consensus that they would have to kill K.D.  *Id.* ¶ 68.  Fields directed Johnson to carry out the murder.  *Id.*

Under cover of night, Johnson and two other crew members forced K.D. into a car and drove her to a deserted road in Maryland.  *Id.*  K.D. begged for her life, at which point Johnson forced her out of the car and told her to walk home.  *Id.*  After she had taken a few steps, however, she turned around to see Johnson preparing to shoot her.  *Id.*  He shot her twice in the head.  *Id.*  Left for dead, K.D. managed to survive her wounds and was eventually found alive by law enforcement, severely injured and still handcuffed.  *Id.*

### 3.      *Shootings of Anthony Chandler, Melonie Speight, and Sam Carson*

The cycle of retaliatory violence between the two gangs continued in the following months.  On October 23, 1996, Fields's crew member Joey Simmons was shot to death, in what Fields believed was revenge for Simmons's murder of a K Street Crew member the preceding summer.  *Id.* ¶¶ 56, 69.  Fields and his associates identified Sam Carson as Simmons's likely shooter and set out to look for Carson the following day.  *Id.* ¶¶ 69–70.

After some time spent driving around searching for Carson, they spotted another K Street Crew member, Anthony Chandler.  *Id.* ¶¶ 70–71.  Although Chandler was not the original target, Fields decided to seize the opportunity to settle another score, since Fields also harbored a grudge against Chandler for the latter's perceived involvement in the kidnapping of an L Street Crew member six years earlier.  *Id.*  As Fields pulled the car up to Chandler, he shouted at the other passengers to "Get him!", while also firing directly at Chandler himself.  *Id.* ¶ 71.  In the

crossfire, one of Fields's passengers was shot, and Fields was forced to abandon the attack on Chandler to drive the injured passenger to the hospital, while Chandler escaped unscathed. *Id.*

Several months later, however, Fields and his crew caught up with Chandler again, when they recognized his van driving past them on January 13, 1997. *Id.* ¶¶ 72–73. Fields pursued, telling his associate to get ready to attack once they caught him. *Id.* ¶ 73. Once they pulled alongside Chandler's van, Fields yelled at his associate to "[h]urry up and shoot," and the associate fired several rounds into the van. *Id.* Chandler was wounded, and his pregnant fiancée, Melanie Speight, who was sitting in the passenger seat, was shot through the neck. *Id.*

Two weeks later, Fields successfully caught up with Carson, as well. He approached a new customer, Dominique "Damo" Gibson, the half-brother of one of his trusted associates, with the offer of a cash payment for killing Carson. *Id.* ¶ 75. Damo accepted, and under the pretense of buying some marijuana from Carson, shot him multiple times, badly wounding him. *Id.* ¶ 77. Fields paid Gibson $1,500 for executing this attack on Carson. *Id.*

\* \* \*

Fields's and Johnson's involvement with the L Street Crew continued over the course of the following year, until their eventual arrest along with other gang members, in March 1998.

### B.    Defendants' Convictions and Sentencings

In March 1998, a federal Grand Jury returned a 70-count indictment charging Fields, Johnson, and nine other individuals with engaging in a Continuing Criminal Enterprise, RICO conspiracy, and numerous drug trafficking and firearm offenses. *See* Indictment, ECF No. 3; *United States v. Fields* (*Fields I*), 242 F.3d 393, 394 (D.C. Cir. 2001), *on reh'g*, (*Fields II*) 251 F.3d 1041 (D.C. Cir. 2001). In May 1999, Fields and Johnson alone were charged in a superseding 64-count indictment, with 44 counts lodged against Fields alone while the remaining

6

20 counts charged both Fields and Johnson.  *See* Retyped Superseding Indictment, ECF No.

229.[2]  The superseding indictment charged defendants with, as relevant here, RICO conspiracy

(Count 3); the kidnapping, gang-rape, and assault with intent to murder in aid of racketeering

activity of K.D. (Counts 12–18); the assaults with intent to kill in aid of racketeering activity of

Hill (Count 7), Chandler (Count 23), Speight (Count 29), and Carson (Count 31); and firearms

offenses in connection with the kidnapping and assaults (Counts 34, 37–38, 40, 43–44).  *Id.*[3]

---

[2]     Out of the original eleven defendants, plus two additional defendants named in a superseding indictment, *see* Superseding Indictment, ECF No. 106, only Fields and Johnson would proceed to trial.  Based on available records, Fields and Johnson's co-defendants resolved their charges with guilty pleas and served out varying terms of incarceration.  *See, e.g.,* Eric Gordon Plea Agreement, ECF No. 95; Gordon Judgment, ECF No. 133 (sentencing Gordon to 276 months incarceration); Travel Riley Plea Agreement, EFC No. 135; Riley Judgment, ECF No. 132 (sentencing Riley to 60 months incarceration); Clinton Taylor Judgment, ECF No. 440 (reflecting Taylor's guilty plea and sentence, in documents now unavailable); Norman Yusef Simmons Plea Agreement, ECF No. 208; Report and Recommendation at 1, ECF No. 404 (noting that N.Y. Simmons was sentenced to time served on April 10, 2002, after having pleaded guilty four years earlier); Troy Manny Simmons Plea Agreement, ECF No. 207 (reflecting T. M. Simmons's guilty plea, though information regarding his ultimate sentence is unavailable); Memorandum Opinion (Feb. 27, 2006) at 1, ECF No. 426 (noting that Ronald Horns was sentenced to a 135-month term of imprisonment following a guilty plea); Probation Pet. at 1, ECF No. 436 (noting that William Bumbrey was sentenced to 60 months incarceration); *see generally* Docket (reflecting that the remaining four co-defendants— Roland Fluellyn, Robert Haygood, Raymond Mayrant, and Ronald Sowells—did not go to trial); Fields PSR at 8–9 (noting that all of Fields' and Johnson's co-defendants either had been sentenced or were pending sentencing as of September 8, 1999).

[3]     Specifically, the superseding indictment charged, first, both Fields and Johnson with conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846, and conspiracy to participate in a Racketeer Influenced Corrupt Organization, in violation of 18 U.S.C. §1962(d) (Counts 1 and 3), and Fields with engagement in a continuing criminal enterprise, in violation of 18 U.S.C. 848(a) and (b) (Count 2), based on the men's extensive involvement with the L Street Crew throughout the 1990s.
        A series of charges related to the targeted attacks Fields and his gang carried out against members of the K Street Crew followed.  Fields was charged with two counts of assault with a dangerous weapon, in violation of D.C. Code §§ 22-502, 105, for his attacks on two individuals not involving a firearm (Counts 4–5); one count of kidnapping while armed, in violation of D.C. Code §§ 22-2101, 3202, for his role in kidnapping and threatening to murder a K Street Crew member at gun- and knife-point in September 1996 (Count 19); and nine counts of assault with intent to kill while armed, in violation of D.C. Code §§ 22-501, 105, 3202, for other attacks involving firearms (Counts 6, 8–9, 20, 22, 24, 26, 28, 30).  The nine latter attacks—the shooting of Hill on July 10, 1996, of Chandler on October 24, 1996 and January 13, 1997, of Speight on January 13, 1997, of Carson on January 30, 1997, and of several other individuals throughout 1996 and 1997—gave rise to nine additional charges for Violent Crime in Aid of Racketeering Activity (VICAR), in violation of 18 U.S.C. § 1959(a)(3), (a)(5) (Counts 7, 10–11, 21, 23, 25, 27, 29, 31).  Both Fields and Johnson were charged with assault with intent to kill while armed, in violation of D.C. Code §§ 22-501, 105, 3202, and an accompanying VICAR offense, in violation of 18 U.S.C. § 1959(a)(3), (a)(5), for their attempted murder of an unknown individual in January 1997 (Counts 32–33).
        Both defendants were charged for their role in the kidnapping, gang-rape, and attempted murder of K.D. on August 26, 1996, including: kidnapping, in violation of 18 U.S.C. § 1201(a)(1), (a)(2) (Count 12), five counts of first degree sexual assault while armed, in violation of D.C. Code §§ 22-4102, 105, 3202 (Counts 13–17), and a VICAR charge based on the assault with intent to murder of K.D., in violation of 18 U.S.C. § 1959(a)(3), (a)(5) (Count 18).

In 1999, following a three-month trial, a jury found Fields guilty of forty counts (acquitting him on eighteen counts while deadlocking on five others; the final count was dismissed on the government's motion) and found Johnson guilty of sixteen counts (acquitting him on four). *See* Verdict Form, ECF No. 455. They were each sentenced to terms greater than life. *See* Fields Judgment, ECF No. 246; Johnson Judgement, ECF No. 247.

Both Johnson and Fields timely appealed their convictions and sentences, challenging venue, sufficiency of the evidence, admission of evidence, joinder of defendants, failure to sever certain counts, their sentence enhancements, and the calculation of their sentences. *See Fields I*, 242 F.3d at 395. The D.C. Circuit rejected most challenges as "meritless," but vacated the sentences and remanded for resentencing with the instructions that (1) the sentences on the drug charges must be based only on the quantities of the relevant drugs that had been proven beyond a reasonable doubt at trial and (2) Application Note 5 to § 2A4.1 of the U.S. Sentencing Guidelines, which had been relied upon to enhance the sentences on the charges related to the kidnapping and attempted murder of K.D., was at odds with the controlling Guideline itself and should not be used. *Id.* at 395–399.

---

The foregoing incidents of violence served as predicates for two sets of firearm offenses. First, both men were charged with a series of violations of 18 U.S.C. § 924(c), for the use of a firearm in connection with many of the federal offenses. Johnson was charged in three counts, for his use of a firearm in connection with K.D.'s kidnapping, K.D.'s VICAR assault with intent to murder, and the VICAR assault with intent to kill of the unknown individual in January of 1997 (Counts 37, 38, and 45). Fields was charged in those same three counts, in addition to nine others: the VICAR assaults with intent to kill of Hill, Chandler, Speight, Carson (Counts 34, 40, 43, and 44), and the remaining VICAR charges (35–36, 39, 41–42).

Both defendants were charged under D.C. law, D.C. Code §§ 22-3204(b), 105, for possession of a firearm during the commission of many of the foregoing D.C. Code offenses, including: six counts, predicated on their five counts of first degree sexual assault while armed of K.D. and on their count for assault with intent to kill while armed of the unknown individual in January 1997 (Counts 49–53, 61). Fields was additionally charged with ten further counts, predicated on his nine D.C. assault to kill while armed offenses and on his D.C. kidnapping while armed offense (Counts 46–48, 54–60).

Finally, Fields was charged with three counts of money laundering, in violation of 18 U.S.C. § 1957 (Counts 62–64).

Following these instructions, the district court on remand sentenced Fields to a minimum imprisonment of life, plus 105 years, and Johnson to 49 years and 4 months.  Johnson Judgment, ECF No 368; Fields Judgment, ECF No. 369.  Defendants once again timely appealed, and the D.C. Circuit affirmed the new sentences.  *United States v. Fields* (*Fields III*), 325 F.3d 286, 290 (D.C. Cir. 2003).  Defendants' subsequent petitions for rehearing and rehearing *en banc* were denied, *see* D.C. Cir. Order, *United States v. Fields*, No. 01-3141 (D.C. Cir. June 5, 2003); D.C. Cir. Order *En Banc*, *United States v. Fields*, No. 01-3141 (D.C. Cir. June 5, 2003), as was their petition for a writ of certiorari, *see Fields v. United States*, 540 U.S. 961 (2003).

### C.   Fields's Other Collateral Challenges

Until his instant motion, Johnson has not pursued collateral challenges to his convictions.

By contrast, the instant motions represent only two out of Fields's many attempts to bring collateral challenges to his convictions on a variety of bases in the decades since his imprisonment began.  To contextualize the challenges currently pending, the procedural history of Fields's other attempts is briefly summarized.

In October 2004, Fields filed his first motion, under 28 U.S.C. § 2255, requesting relief on the grounds that "(1) his sentence [was] unconstitutional because it exceed[ed] the statutory maximum for the offense of conviction; (2) newly discovered evidence entitle[d] him to a new trial; and (3) the prosecutor suborn[ed] perjury and failed to disclose exculpatory evidence." *United States v. Fields* (*Fields IV*), No. 98-cr-0071 (TFH), 2006 WL 148739, at *1 (D.D.C. Jan. 18, 2006); Fields's First Mot. to Vacate (Oct. 15, 2004), ECF No. 398.  That motion was denied, upon findings that "[t]here is no merit to [Field's] *Brady* claim[;]" "[t]he short portion of testimony provided by defendant is not exculpatory[;]" and "the disclosure of [the alleged exculpatory] information . . . was not material and would not have affected the outcome of the

9

trial." *Fields IV*, 2006 WL 148739, at *3.  Fields appealed, Not. of Appeal, ECF No. 424, but

the D.C. Circuit held that appeal in abeyance until the district court determined whether a

certificate of appealability should issue in the first instance, D.C. Cir. Order (March 2, 2006),

ECF No. 428.  The district court subsequently denied that certificate, Order (March 8, 2006),

ECF No. 429, and the D.C. Circuit then dismissed the appeal, *see* D.C. Cir. Order, *In re Fields*,

No. 06-3039 (D.C. Cir. Sept. 11, 2007).

Around the same time, Fields mounted a renewed attempt to challenge his sentence by

alleging newly discovered evidence, this time in the form of a *pro se* motion for relief under Fed.

R. Civ. P. 60(b)(2).  Fields's Mot. for Relief (Docketed Aug. 3, 2007), ECF No. 435.  This

motion was "more appropriately characterized as a Motion For A New Trial Based On Newly

Discovered Evidence under Federal Rule of Criminal Procedure 33," as Fields was a criminal

defendant, and the motion was therefore denied as untimely.  Order (Aug. 3, 2007), ECF No.

434.

Five years later, Fields pursued a second § 2255 motion by seeking the D.C. Circuit's

authorization to file such a second or successive motion, again based on a claim of newly

discovered evidence.  *See* Fields's Petition, *In re Fields*, No. 12-3041 (D.C. Cir. June 15, 2012).

The D.C. Circuit denied that petition, reasoning that all the documents upon which Fields

attempted to rely were over a year old and Fields had not demonstrated the purported evidence

contained therein could only have been discovered through due diligence at that belated date.

*See* D.C. Cir. Order, *In re Fields*, No. 12-3041 (D.C. Cir. Sept. 14, 2012).

In February 2019, Fields filed a second *pro se* motion for relief, under Federal Rule of

Civil Procedure 60(b)(2), this time challenging the outcome of his first § 2255 proceedings in

*Fields IV*.  Fields's Mot. for Relief (Feb. 25, 2019), ECF No. 465.  Finding that the motion was

"in substance" a successive motion under 28 U.S.C. § 2255, the district court determined that jurisdiction was lacking absent prior approval from the D.C. Circuit, and therefore transferred the case to the Circuit, pursuant to 29 U.S.C. § 1631.  *United States v. Fields* (*Fields V*), 387 F. Supp. 3d 1, 3, 7 (D.D.C. 2019).  Fields apparently did not pursue these claims further before the Circuit.

A year later, however, Fields returned to the D.C. Circuit with another petition to file a second or successive § 2255 motion (his third such request; his second led to the instant motions and is therefore covered, *infra,* in Part I.D.).  He based that petition, again, on claims of newly discovered evidence, plus an additional claim of ineffective assistance of trial counsel.  *See* Fields's Petition, *In re Fields*, No. 20-3052 (D.C. Cir. Aug. 19, 2020).  The D.C. Circuit once again rejected his petition, noting that none of the evidence had been demonstrated to be only recently discoverable through due diligence—indeed, most of the affidavits presented were among those previously rejected in his first petition—and that Fields fell short of establishing a reasonable possibility that his counsel's alleged errors altered the result of his proceeding.  *See* D.C. Cir. Order at 1, *In re Fields*, No. 20-3052 (D.C. Cir. Feb. 5, 2021).  Since then, Fields has pursued no further collateral challenges in this Circuit.[4]

### D.     The Instant Motions

The three pending motions trace their origins to 2015, when the Supreme Court held in *Johnson v. United States* that the "residual clause" in the definition of a "violent felony," as used in the Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C. § 924(e)(2)(B), is unconstitutionally vague.  576 U.S. at 593–94, 597.  Nearly a year later, in *Welch v. United*

---

[4]       The government reports that Fields filed at least one additional *pro se* petition in another court; specifically, in 2012, he sought relief pursuant to 28 U.S.C. § 2241 in the Middle District of Pennsylvania, which court dismissed his petition for lack of jurisdiction.  *See* Gov't's Fields Opp'n at 18.

*States*, the Supreme Court concluded that *Johnson* had announced a substantive rule that applied retroactively on collateral review.  578 U.S. 120, 130 (2016).  That ruling provided potential new grounds for relief for Fields and Johnson, because their § 924(c) convictions involved the same definition of "violent felony" at issue in *Johnson* in the context of ACCA.  Recognizing that many defendants who had been sentenced in this Court were in a similar position and that "time [wa]s of the essence" for them to file *Johnson*-based claims before the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")'s one-year limitations period for collateral challenges expired on June 26, 2016, the undersigned, in her capacity as Chief Judge of the Court, issued a Standing Order, on June 2, 2016, to govern all defendants seeking possible sentence reductions under the newly announced rules.  *See* Standing Order of the U.S. District Court for the District of Columbia (June 2, 2016) ("June 2, 2016 SO") at 1.  That Standing Order authorized the Office of the Federal Public Defender, which was appointed to represent qualifying defendants, to file an "abridged motion" seeking relief under *Johnson* by June 26, 2016, and then to supplement that motion "fully briefing the issues presented" by October 26, 2016.  *Id.* at 1–2.  The latter deadline was subsequently modified several times in anticipation of further relevant decisions from the Supreme Court, ultimately deferring the supplemental briefing until after the Supreme Court issued its ruling in *United States v. Davis* several years later.  *See* Standing Order of the U.S. District Court for the District of Columbia (Sept. 9, 2016); Standing Order of the U.S. District Court for the District of Columbia (Oct. 14, 2016); Standing Order of the U.S. District Court for the District of Columbia (March 22, 2017); Standing Order of the U.S. District Court for the District of Columbia (May 2, 2018); Standing Order of the U.S. District Court for the District of Columbia (Aug. 8, 2018); Standing Order of the U.S. District Court for the District of Columbia (March 19, 2019) at 3.

Johnson, in accordance with these instructions, filed a *pro se* motion under 28 U.S.C. § 2255, challenging his § 924(c) convictions in Counts 37 and 38. *See* Johnson Mot. Vacate at 5, 12, ECF No. 447. He then obtained the assistance of the Office of the Federal Public Defender, which timely filed Johnson's abridged motion under § 2255 on June 20, 2016, and Johnson's supplementary motion on January 27, 2020. *See* Johnson Abridged Mot. Vacate, ECF No. 448; Johnson Scheduling Order (Sept. 17, 2019); Johnson Supp. Mot.

Fields, likewise, sought to file a motion, but had to clear an initial procedural hurdle due to his prior pursuit of § 2255 relief. Accordingly, he filed a petition pursuant to 18 U.S.C. § 2244 in the D.C. Circuit, seeking authorization to file his second or successive § 2255 motion in the district court (his second such petition, out of three total, *see supra* Part I.C). *See* Mot. for Auth. to File a Second or Successive Motion, ECF No. 457; Emergency Supp. Mot. for Auth. to File a Second or Successive Motion, ECF No. 457-2. That petition requested permission to file not only a § 2255 motion based on *Johnson*, but also a § 2255 motion based on *Graham* and *Miller*, which dealt with the imposition of life sentences on minor defendants. *See id.* While that petition was pending, Fields filed, on June 25, 2016, an abridged motion in district court in accordance with the June 2, 2016 Standing Order. Fields Abridged Second Mot. Vacate, ECF No. 449. The D.C. Circuit authorized Fields's filing of his second and successive motions for both sets of claims, simultaneously noting the timeliness of his claims under *Johnson* and expressing no opinion on the timeliness of his claims under *Graham* and *Miller*. D.C. Cir. Order (Sept. 7, 2016), ECF No. 456. That hurdle cleared, at least as to the *Johnson*-based motion, Fields's motions were timely supplemented pursuant to the Court's Standing Orders and Scheduling Order on February 3, 2020. *See* Fields Scheduling Order (Sept. 17, 2019); Fields Supp. *Johnson*/*Davis* Mot.; Fields Supp. *Graham*/*Miller* Mot.

13

The briefing deadlines on all three of these motions were repeatedly extended, in response to numerous requests on both sides to modify the governing scheduling orders. *See* Minute Order (March 24, 2020); Minute Order (April 1, 2020); Minute Order (May 7, 2020); Minute Order (June 1, 2020); Minute Order (July 13, 2020); Minute Order (July 31, 2020); Minute Order (Sept. 4, 2020); Minute Order (Nov. 2, 2020); Minute Order (Nov. 13, 2020); Minute Order 1 (Dec. 18, 2020); Minute Order 2 (Dec. 18, 2020), Minute Order (Feb. 17, 2021). The three instant motions finally became ripe for resolution nearly five years after they had originally been filed. *See* Gov't's Opp'n to Fields's Mots. to Vacate ("Gov't's Fields Opp'n"), EFC No. 499; Gov't's Opp'n to Johnson's Mot. to Vacate ("Gov't's Johnson Opp'n"), ECF No. 500; Johnson Reply Supp. Mot. to Vacate ("Johnson Rep."), ECF No. 509; Fields Reply Supp. Mot. to Vacate Based on *Johnson* and *Davis* ("Fields *Johnson*/*Davis* Rep."), ECF No. 511; Fields Reply Supp. Mot. to Vacate Based on *Graham* and *Miller* ("Fields *Graham*/*Miller* Rep."), ECF No. 512. Both defendants subsequently supplemented their motions with memoranda addressing the perceived impact of the Supreme Court's intervening decisions in *Borden v. United States*, 141 S. Ct. 1817 (2021), *see* Johnson Supp. Mem. on VICAR Predicates and *Borden* ("Johnson Supp. *Borden* Mem."), ECF No. 525; Fields Supp. Mem. on VICAR Predicates and *Borden* ("Fields Supp. *Borden* Mem."), ECF No. 524, and *United States v. Taylor*, 142 S. Ct. 2015 (2022), *see* Johnson Not. Supp. Auth. ("Johnson Supp. *Taylor* Not."), ECF No. 537; Fields Not. Supp. Auth. ("Fields Supp. *Taylor* Not."), ECF No. 536.

## II.   LEGAL STANDARD

A person in federal custody may petition the court in which he was sentenced for resentencing "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or

that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  A court shall correct a sentence if "the sentence imposed was not authorized by law or otherwise open to collateral attack, or . . . there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."  *Id.* § 2255(b).  The petitioner bringing a motion under § 2255 must establish, by a preponderance of the evidence, the denial of a constitutional right.  *See United States v. Simpson*, 475 F.2d 934, 935 (D.C. Cir. 1973).

Motions under § 2255 are subject to "the strict time limits that Congress has placed on prisoners seeking collateral relief."  *United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002); *see also* 28 U.S.C. § 2255(f).  Section 2255 provides several possible one-year periods during which a petitioner may file a motion, including within one year of "the date on which the right asserted was initially recognized by the Supreme Court."  28 U.S.C. § 2255(f)(3).  A motion that is timely under only § 2255(f)(3) must also show that the asserted right "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  *Id.*  These are independent conditions limiting the availability of relief.  *Dodd v. United States*, 545 U.S. 353, 357–59 (2005).  Before a petitioner may file a second or successive § 2255 motion, the petitioner must make at least a *prima facie* showing that the motion contains "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C. § 2255(h)(2); *see also In re Williams*, 759 F.3d 66, 69–70 (D.C. Cir. 2014).

## III.    DISCUSSION

The three pending motions, pursuant to § 2255, are, first, both Fields's and Johnson's separate motions seeking vacatur of their § 924(c) convictions, in the wake of the Supreme

Court's decisions in *Johnson* and *Davis*, and, second, Fields's motion to vacate his two life sentences imposed for offenses he committed as a 22-year-old that he claims must be reconsidered in light of the Supreme Court's *Graham* and *Miller* decisions regarding the treatment of juvenile defendants. As to all three of these motions, defendants' compliance with the labyrinthine procedural requirements of AEDPA will be considered first, followed by a discussion of the substantive issues, and, finally, an assessment of defendants' arguments that they are entitled to a full resentencing on all counts of conviction if they are successful in any one of their challenges.

### A.   Johnson and Fields's Challenges to Their § 924(c) Convictions Under *Johnson* and *Davis*

Defendants' initial motions concern their convictions under 18 U.S.C. § 924(c) for carrying a firearm during (1) a kidnapping, in violation of 18 U.S.C. § 1201 (Count 37 for both Fields and Johnson); (2) an assault with intent to murder under Maryland law in aid of racketeering, in violation of § 1959(a)(3) and (a)(5) (Count 38 for both Fields and Johnson); and (3) four assaults with intent to kill under D.C. law in aid of racketeering, in violation of § 1959(a)(3) and (a)(5) (Fields's Counts 34, 40, 43, and 44). They argue that under the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), as extended in *United States v. Davis*, 139 S. Ct. 2319 (2019), these predicate convictions no longer qualify as crimes of violence to support their § 924(c) convictions, requiring their vacatur.

While defendants have properly complied with AEDPA's procedural requirements to bring these challenges, only their § 924(c) convictions, on Count 37, predicated on the federal kidnapping statute rests on an offense that no longer qualifies as a crime of violence. Their respective convictions on Count 37 will therefore be vacated, but the remainder of their § 924(c) convictions will stand.

16

1.   ***Defendants' Compliance with AEDPA's Procedural Prerequisites***

a)   ***Timeliness and Procedural Default***

As discussed *supra* in Part II, motions under § 2255 are subject to a "1-year period of

limitation." 28 U.S.C. § 2255(f). The limitation period runs from the latest of several possible

dates, including, as relevant here, "the date on which the right asserted was initially recognized

by the Supreme Court, if that right has been newly recognized by the Supreme Court and made

retroactively applicable to cases on collateral review." *Id.* § 2255(f)(3). The timeliness of

Johnson's and Fields's § 2255 motions based on *Johnson* and *Davis* based on this deadline is not

contested. As the D.C. Circuit noted, upon considering Fields's petition to file a second or

successive § 2255 motion, because that petition "was filed within one year of the Supreme

Court's June 26, 2015 *Johnson* decision . . . the 'abridged' motion shall be deemed timely filed

in district court with respect to petitioner's *Johnson* claims." D.C. Cir. Order (Sept. 7, 2016) at

2, ECF No. 456; *see also* Fields Abridged Second Mot. Vacate (filed June 25, 2016). Johnson,

similarly, filed his § 2255 motion prior to June 25, 2016. *See* Johnson Mot. Vacate (filed June

15, 2016); Johnson Abridged Mot. Vacate (filed June 20, 2016). These two motions are

therefore timely.

The government focuses instead on a separate procedural hurdle, arguing that Johnson's

and Fields's § 924(c) claims predicated on their non-kidnapping convictions are procedurally

barred, because they did not assert these claims on direct appeal.[5] "The procedural default rule

generally precludes consideration of an argument made on collateral review that was not made

on direct appeal, unless the defendant shows cause and prejudice." *United States v. Hughes*, 514

---

[5]   The government does not argue that their § 924(c) claims predicated on their kidnapping convictions are
similarly procedurally defaulted, choosing instead to concede the merits of these claims. *See* Gov't Fields Opp'n
at 23; Gov't Johnson Opp'n at 12–13.

F.3d 15, 17 (D.C. Cir. 2008).  The government asserts that defendants can show neither cause nor prejudice in this case.  Gov't's Fields Opp'n at 24; Gov't's Johnson Opp'n at 14.

The law is well-established, however, that cause for default exists "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel" on direct appeal. *Reed v. Ross*, 468 U.S. 1, 16 (1984).  A claim is novel under "[a]t least three circumstances:" "(1) the Supreme Court explicitly overrules its own precedent; (2) the Supreme Court changes course on a 'longstanding and widespread practice to which [the Supreme Court had] not spoken, but which a near-unanimous body of lower court authority had expressly approved'; and (3) the Supreme Court disapproves of a once-sanctioned practice."  *United States v. Hammond*, 354 F. Supp. 3d 28, 42 (D.D.C. 2018) (quoting *Reed*, 468 U.S. at 17) (second alteration in original).  As to prejudice, a petitioner "must *at least* demonstrate that 'there is a reasonable probability that, but for [the errors], the result of the proceeding would have been different.'"  *United States v. Pettigrew*, 346 F.3d 1139, 1144 (D.C. Cir. 2003) (quoting *United States v. Dale*, 140 F.3d 1054, 1056 n.3 (D.C. Cir. 1998)) (emphasis and alterations in original).  For the purposes of conducting the prejudice analysis, the existence of an error must be assumed.  *Id.* at 1145.

Both cause and prejudice are present here.  Despite the government's conclusory assertion that "defendant[s] cannot show cause based on *Johnson* and its progeny," Gov't's Fields Opp'n at 24; Gov't's Johnson Opp'n at 14, courts in this Circuit have repeatedly recognized the novelty of claims based on *Johnson* (therefore establishing cause), explaining that "[t]he constitutional right vindicated by the *Johnson* line of cases, culminating in *Davis*, was unforeseeable," *United States v. Smith*, 605 F. Supp. 3d 1, 13–14 (D.D.C. 2022), and "no one— the government, the judge, or the appellant—could reasonably have anticipated *Johnson*," *United States v. Redrick*, 841 F.3d 478, 480 (D.C. Cir. 2016).  This is unsurprising, for *Johnson*

explicitly overruled two prior Supreme Court holdings, putting it squarely in *Reed*'s first example of novelty. *See Johnson*, 576 U.S. at 606 ("Our contrary holdings in *James [v. United States*, 550 U.S. 192 (2007)] and *Sykes [v. United States*, 564 U.S. 1 (2011)] are overruled.").

Prejudice is likewise straightforwardly established. Assuming that defendants are correct that several of the predicate offenses for their § 924(c) firearm convictions no longer qualify as crimes of violence, their sentences should be substantially shorter. The government effectively concedes this point in agreeing that both defendants' Count 37 § 924(c) convictions predicated on kidnapping must be vacated and their sentences shortened accordingly. *See infra*, Part III.A.2.b. "The possibility of a sentence reduction . . . establishes prejudice." *United States v. Brown*, 249 F. Supp. 3d 287, 293 (D.D.C. 2017) (alteration and internal quotation omitted). Nonetheless, the government argues that because defendants' remaining § 924(c) claims have "no merit," defendants cannot show prejudice. Gov't's Fields Opp'n at 24; Gov't's Johnson Opp'n at 14. That position erroneously conflates the pertinent inquiries and puts the proverbial cart before the horse, by leaping to assess the merits of defendants' claims before determining whether they would be prejudiced by their claimed error. Instead, the prejudice analysis must be performed assuming the existence of an error. *See Hammond*, 354 F. Supp. 3d at 42 (citing *Pettigrew*, 346 F.3d at 1145). By conceding that defendants have earned a sentence reduction as to at least one of their *Johnson*-based claims, the government has also effectively conceded the existence of prejudice as to all their similar claims: if defendants are correct that *Johnson* mandates the vacatur of several of their § 924(c) convictions, their sentences are too long.

Accordingly, Judges on this Court, including the undersigned, universally have rejected the government's repeated effort to foreclose through procedural default § 2255 motions seeking the benefit of *Johnson* and *Davis*. *See, e.g.*, *Smith*, 605 F. Supp. 3d at 14 (Howell, C. J.)

(rejecting procedural default argument for post-*Johnson* § 2255 motion); *United States v. Sumner*, 597 F. Supp. 3d 120, 135 (D.D.C. 2022) (Kollar-Kotelly, J.) (same); *Sorto v. United States*, No. 08-cr-167-4 (RJL), 2022 WL 558193, at *2 (D.D.C. Feb. 24, 2022) (Leon, J.) (same); *Hammond*, 354 F. Supp. 3d at 43 (Howell, C. J.) (same); *United States v. Carter*, 422 F. Supp. 3d 299, 310 (D.D.C. 2019) (Huvelle, J.) (same); *United States v. West*, 314 F. Supp. 3d 223, 229 n.4 (D.D.C. 2018) (Leon, J.) (same); *United States v. Taylor*, 272 F. Supp. 3d 127, 135–36 (D.D.C. 2017) (Kollar-Kotelly, J.) (same); *United States v. Wilson*, 249 F. Supp. 3d 305, 315 (D.D.C. 2017) (Huvelle, J.) (same); *Brown*, 249 F. Supp. 3d at 292–93 (Sullivan, J.) (same); *United States v. Booker*, 240 F. Supp. 3d 164, 170–71 (D.D.C. 2017) (Friedman, J.) (same).  Nothing about this case justifies different treatment.

### b)       *Limits on Successive Petitions Under 28 U.S.C. § 2255(h)(2)*

Fields's § 2255 motion faces an additional procedural hurdle not applicable to Johnson's motion.  The fact that Fields's motion is a second or successive § 2255 motion means that the motion must be reviewed and "certified . . . by a panel of the appropriate court of appeals" before the district court may consider it.  28 U.S.C. § 2255(h)(2); *see also Smith*, 605 F. Supp. 3d at 14–15.  If a three-judge panel of the court of appeals "determines that the application makes a *prima facie* showing that the application satisfies the requirements of this subsection," 28 U.S.C. § 2244(b)(3)(B)–(C), including that the claim relies on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," *id.* § 2255(h)(2), the panel may authorize the filing of the motion in the district court, *id.* § 2244(b)(3)(A).  Upon receipt of a second or successive application certified by the court of appeals, however, the district court must "dismiss any claim presented . . . unless the applicant shows that the claim satisfies the requirements of this section."  *Id.* § 2244(b)(4).  Thus, before

the court of appeals, an applicant need only make a "*prima facie* showing that [the application] contains a previously unavailable new rule of constitutional law made retroactive on collateral review by the Supreme Court," *Williams*, 759 F.3d at 69–70, but "to survive dismissal in district court, the applicant must actually show that the claim satisfies the standard," *Tyler v. Cain*, 533 U.S. 656, 661 n.3 (2001) (internal quotation omitted).

When certifying Fields's instant § 2255 motion, *see* D.C. Cir. Order (Sept. 7, 2016), the D.C. Circuit did so on the basis that he had "made a *prima facie* showing that his claims relie[d] on a new, previously unavailable rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court," but "expresse[d] no opinion as to the merits of petitioner's claims." *Id.* at 1–2 (citing *Johnson*, 576 U.S. at 591, *Welch*, 578 U.S. at 130, and *Williams*, 759 F.3d at 72).  As explained further below, with regard to his § 924(c) conviction predicated on kidnapping in Count 37, defendant certainly has "show[n] that the [*Johnson* and *Davis*-based] claim satisfies the requirements" of §§ 2244 and 2255, 28 U.S.C. § 2244(b)(4), given his convincing argument and the government's concession that the federal kidnapping offense does not fit the only definition of "crime of violence" under § 924(c) remaining after *Davis*.  With regard to his other § 924(c) convictions, defendant has not "show[n]" conclusively that the predicate offenses fail to qualify as crimes of violence under the elements clause of § 924(c), and yet, given "the unsettled state of the law on the showing required by post-*Johnson* . . . habeas petitioners," *West*, 314 F. Supp. 3d at 232, the motion should not be disposed of on procedural grounds.  Where, as here, the requisite procedural showing merges so closely with the merits, disposition on the merits is the preferable course.  *See United States v. Wilson*, No. 96-cr-319-01 (CKK), 2019 WL 4990752, at *10 (D.D.C. Oct. 7, 2019) (although "procedural default is generally a preliminary issue to be addressed before a federal court's

consideration of the merits of a claim," prejudice analysis "essentially requires a merits analysis" such that "'when relief is due to be denied even if claims are not procedurally barred, a federal court can skip over the procedural bar issues' [to] . . . address the merits" of a defendant's claims (*quoting Loggins v. Thomas*, 654 F.3d 1204, 1215 (11th Cir. 2011) (alterations omitted))).

* * *

Thus, both defendants' claims as to their § 924(c) convictions based on *Johnson* and *Davis* will be addressed on the merits.

### 2.    *Merits*

To succeed on the merits of the claims mounted in their *Johnson* and *Davis*-based § 2255 motions, defendants must show that the underlying prior convictions subjecting defendants to enhanced sentences do not qualify as crimes of violence under either the elements clause or enumerated-felonies clause of § 924(c).  While they make this requisite showing as to their § 924(c) convictions predicated on kidnapping, they cannot do so for their remaining § 924(c) convictions.  Their remaining § 924(c) convictions are predicated on the "violent crime in aid of racketeering" ("VICAR") statute, which prohibits the commission of certain violent crimes either (1) in exchange for "anything of pecuniary value from an enterprise engaged in racketeering activity," or (2) "for the purpose of gaining entrance to or maintaining or increasing position in" such an enterprise.  18 U.S.C. § 1959(a).  The underlying VICAR "violent crimes" are, here, the assault with intent to murder under Maryland law (for which the victim was K.D.) and assaults with intent to kill under D.C. law (for which the victims were Hill, Chandler, Speight, and Carson).  These offenses remain "crimes of violence" under the elements clause of § 924(c), and thus all the challenged § 924(c) convictions, with the exception of Count 37, must stand.

### a)      The Supreme Court's Decisions in **Johnson** and **Davis**

In *Johnson*, the Supreme Court considered the constitutionality of an ACCA provision that enhanced the sentence imposed on a defendant convicted of being a felon in possession of a firearm if he had "three or more previous convictions for a 'violent felony.'"  576 U.S. at 593; *see also* 18 U.S.C. § 924(e).  The statute offers two alternate definitions of "violent felony." First, under the "elements clause," a violent felony includes any crime punishable by more than one year's imprisonment that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i).  Next, under the "residual clause," a violent felony also includes a crime punishable by more than one year's imprisonment that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  *Id.* § 924(e)(2)(B)(ii).

In analyzing whether the residual clause violated the Fifth Amendment's Due Process Clause and the "well-recognized" prohibition against "vagueness in criminal statutes,"  *Johnson*, 576 U.S. at 595 (citing *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)), the Supreme Court concluded that the statute's reference to crimes "otherwise involv[ing] conduct that presents a serious potential risk of physical injury to another" demanded a categorial approach to interpretation, whereby a court must "picture the kind of conduct that the crime involves in 'the ordinary case' and . . . . judge whether that abstraction presents a serious potential risk of physical injury," *id.* at 596 (citing *James*, 550 U.S. at 208).  Set against this understanding, the Court observed that the residual clause of § 924(e) left "grave uncertainty about how to estimate the risk posed by a crime" by "t[ying] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements," *id.* at 597, and created

"uncertainty about how much risk it takes for a crime to qualify as a violent felony," *id.* at 598. The Court found that "[b]y combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony," the residual clause of § 924(e) produced "more unpredictability and arbitrariness than the Due Process Clause tolerates," and declared this definitional clause unconstitutional. *Id.*

The next year, in 2016, the Court held that *Johnson* had been a substantive decision with retroactive effect in cases on collateral review. *Welch*, 578 U.S. at 130. Then, in 2018, the Court extended the holding in *Johnson* to strike down, on the same grounds, a similarly worded provision in the definition of "crime of violence" codified in 18 U.S.C. § 16(b). *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1223 (2018).

Finally, in 2019, the Court considered a challenge for unconstitutional vagueness to a different provision of 18 U.S.C. § 924, which enhances the prison sentence imposed on a defendant who, in connection with a "crime of violence" or drug trafficking offense, uses a firearm. *Davis*, 139 S. Ct. at 2323–24; *see* 18 U.S.C. § 924(c)(1). Like the portion of § 924 at issue in *Johnson*, § 924(c) offers two alternative definitions for "crime of violence": under the elements clause, a crime of violence is defined as a felony having "as an element the use, attempted use, or threatened use of physical force against the person or property of another," 18 U.S.C. § 924(c)(3)(A), and under the residual clause, such a crime is defined as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," *id.* § 924(c)(3)(B). Noting that the residual clause in § 924(c)(3) bore "more than a passing resemblance" to the ACCA residual clause at issue in *Johnson* and the residual clause of 18 U.S.C. § 16(b) at issue in *Dimaya*, *Davis*, 139 S. Ct. at 2325–26, the Court held that the residual clause in § 924(c)(3) "provide[d] no

reliable way to determine which offenses qualify as crimes of violence" and therefore was also "unconstitutionally vague," *id.* at 2324. Recognizing that the residual clause of § 924(c) had "[f]or years" been understood "to require exactly the same categorial approach that [the] Court found problematic in the residual clauses of the ACCA and § 16," the Court declined to read into § 924(c)(3)(B) a different interpretation, and instead struck this clause as unconstitutional, since "the imposition of criminal punishment can't be made to depend on a judge's estimation of the degree of risk posed by a crime's imagined 'ordinary case,'" *id.* at 2326–27.

The effect of the Supreme Court's decisions in the *Johnson* line of cases is that, to receive an enhanced consecutive penalty of five to thirty years' imprisonment for use of a firearm during a crime of violence, under 18 U.S.C. § 924(c)(1), a defendant must have been convicted of an offense qualifying as a crime of violence under the elements clause of § 924(c)(3)(A)—*i.e.*, of a felony offense "that has as an element the use, attempted use, or threatened use of physical violence against the person or property of another." Predicate offenses that qualify as "crimes of violence" only under the residual clause of § 924(c)(3)(B), no longer suffice to support the sentencing enhancement provided in that statute.[6]

> ### b)   Fields's & Johnson's Count 37: Convictions Under § 924(c) for Use of a Firearm During Kidnapping Under 18 U.S.C. § 1201

Both defendants were convicted, in their respective Counts 37, of violating § 924(c) for "[u]se of a firearm during and in relation to a crime of violence . . . on or about August 26, 1996," namely the "armed kidnap[p]ing of [K.D.]," for which they were convicted in their respective Counts 12, and for which Johnson was sentenced to 5 years, and Fields 20, to be

---

[6]     Of course, per the terms of the statute, an individual may be convicted under 18 U.S.C. § 924(c) for use of a firearm "in relation to any crime of violence *or* drug trafficking crime." *Id.* § 924(c)(1)(A) (emphasis added). Drug trafficking convictions thus continue to qualify as predicate offenses under § 924(c), even after *Johnson* and *Davis*, but neither party argues that prong of the statute applies to the convictions at issue here.

served consecutively.  Verdict Form at 12, 16; Johnson Judgment at 2; Fields Judgment at 2.

The parties agree that both defendants' Count 37 convictions must be vacated because

defendants' felony kidnapping convictions only qualify as a "crime of violence" under

§ 924(c)(3)'s residual clause, which was invalidated by the Supreme Court in *Davis*.  Fields

Supp. *Johnson*/*Davis* Mot. at 8–12; Johnson Supp. Mot. at 7–10; Gov't's Fields Opp'n at 27;

Gov't's Johnson Opp'n at 16.  The felony kidnapping conviction does not qualify as a "crime of

violence" under the elements clause of § 924(c)(3) because, examining the statute using the

categorial approach, kidnapping "may be accomplished through non-physical means" and thus

does not have as an element the use or threatened use of violent physical force.  Fields Supp.

*Johnson*/*Davis* Mot. at 10; Johnson Supp. Mot. at 8.  Under 18 U.S.C. § 1201(a), a defendant

who "unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away . . . any

person" may be found guilty of felony kidnapping if they "hold[]" that person "for ransom or

reward or otherwise."  As the government explains, "[t]wo of those means, inveigling and

decoying, do not require the use or threatened use of physical force," and thus do not satisfy the

elements clause of Section 924(c)(3)(A).  Gov't's Fields Opp'n at 27; Gov't's Johnson Opp'n at

16.  Moreover, "holding" a person "does not necessarily require the use or threatened use of

physical force."  *Id.* (citing *United States v. Walker*, 934 F.3d 375 (4th Cir. 2019)); Gov't's

Fields Opp'n at 27 (citing *United States v. Walker*, 934 F.3d 375 (4th Cir. 2019)).  Thus, "the

minimum criminal conduct required" for a kidnapping conviction under 18 U.S.C. § 1201 does

not "necessarily involve[] violence."  Fields Supp. *Johnson*/*Davis* Mot. at 9 (citing *Montcrieffe v.

Holder*, 569 U.S. 184, 190–91 (2013)); Johnson Supp. Mot. at 7–8 (citing *Montcrieffe*, 569 U.S.

at 190–91).  *See also United States v. Lassiter*, 1 F.4th 25, 29 (D.C. Cir. 2021) (finding that

"[w]ithout the residual clause" of § 924(c), "kidnapping no longer met the definition of a 'crime of violence'").

Accordingly, despite the egregious violence meted out to K.D. as part of her particular kidnapping, the parties are correct that felony kidnapping does not qualify as a crime of violence under the elements clause of § 924(c) and that defendants' convictions on their respective Counts 37 must be vacated.

> ### c)    Fields's Counts 34, 38, 40, 43, and 44 & Johnson's Count 38: Remaining § 924(c) Convictions for VICAR Assault with Intent to Murder Under Maryland and VICAR Assault with Intent to Kill Under D.C. Law, In Violation of 18 U.S.C. § 1959(a)(3), (a)(5)

The parties disagree as to whether Johnson's one remaining and Fields's five remaining § 924(c) convictions may stand after *Johnson* and *Davis*. In these counts, defendants were convicted under § 924(c) with the "[u]se of a firearm during and in relation to a crime of violence or drug trafficking crime," where those predicate crimes were the following VICAR offenses:

> Fields Count 34: The assault with intent to kill while armed of Vincent Hill in violation of D.C. Code 22 D.C. Code §§ 22-501, 3202,[7] in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(3), (a)(5) (convicted in Count 7).

> Fields and Johnson Count 38: The assault with intent to murder of K.D. in violation of Maryland common law, in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(3), (a)(5) (convicted in Count 18).

> Fields Count 40: The assault with intent to kill while armed of Anthony Chandler in violation of D.C. Code 22 D.C. Code §§ 22-501, 3202,[8] in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(3), (a)(5) (convicted in Count 23).

---

[7]    The D.C. Code has since been amended; the relevant provisions can now be found at D.C. Code §§ 22-401, 4502.

[8]    *Id.*

Fields Count 43: The assault with intent to kill while armed of Melanie Speight in violation of D.C. Code 22 D.C. Code §§ 22-501, 3202,[9] in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(3), (a)(5) (convicted in Count 29).

Fields Count 44: The assault with intent to kill Samuel Carson while armed in violation of D.C. Code 22 D.C. Code §§ 22-501, 3202,[10] in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(3), (a)(5) (convicted in Count 31).

Verdict Form at 11–17, 24; Retyped Superseding Indictment at 31–32, 37, 40, 43–44, 46–48.[11]

"Courts generally determine whether a federal VICAR count is a 'crime of violence' based on whether the state law predicate to the VICAR conviction is a 'crime of violence.'"  *United States v. Mejia*, -- F. Supp. 3d --, No. 10-cr-256-03 (RCL), 2023 WL 2297465, at *6 (D.D.C. Feb. 23 2023) (citing *United States v. Carson*, 455 F.3d 336, 367–68 (D.C. Cir. 2006)); *see also, e.g.,*

---

[9]     *Id.*

[10]     *Id.*

[11]     The parties agreed that these were the underlying predicate offenses when defendants submitted their initial *Johnson/Davis* § 2255 motions.  *See* Fields Supp. *Johnson/Davis* Mot. at 12, 17; Johnson Supp. Mot. at 11; Gov't's Fields Opp'n at 20–21 & n.17; Gov't's Johnson Opp'n at 11 & n.7.  Over a year and a half later, upon receiving the Court's permission to file a supplemental memorandum addressing the impact of the Supreme Court's recent decision in *Borden*, defendants reversed course and attempted to argue for the first time (in a section separate from that addressing the legal import of *Borden*, and for which no authorization had been sought) that the predicate offenses were ambiguous, and that the jury could have found defendants guilty of using a firearm during *either* an assault with a deadly weapon, in violation of § 1959(a)(3) *or* an attempted murder in violation of § 1959(a)(5).  *See* Fields Supp. *Borden* Mem. at 9–12; Johnson Supp. *Borden* Mem. at 9–12.
        As evinced by the parties' total agreement on this point when the motions were adversarily briefed, the relevant documents do not in fact create such ambiguity.  *See In re Sealed Case*, 548 F.3d 1085, 1089 (D.C. Cir. 2008) (explaining that "when the conviction results from a trial," a court looks "to the statutory definition as well as the indictment or information and jury instruction" to determine which elements the jury necessarily would have "had to find" (internal quotation omitted)).  Here, the jury instructions (which defendants reproduce in their supplement memoranda) for Count 38—to take a representative example—instruct that this § 924(c) charge "relates to . . . the attempt to murder and assault with a dangerous weapon of [K.D.] as a violent crime in aid of racketeering activity, as charged in count 18."  Johnson Supp. *Borden* Mem. at 10 (quoting Jury Instr. at 167).  The instructions for Count 18, in turn, specify that the defendants were "charged with commit[ing] a violent crime in aid of racketeering activity, namely, assault with intent to kill while armed."  *Id.* at 11 (quoting Jury Instr. at 158).  (The instructions for Fields's other counts at issue are, in relevant part, identically worded, *see* Fields Supp. *Borden* Mem. (quoting and citing Jury Instr. at 156–58, 166, 168–69)  These instructions are consistent with the superseding indictment, which specified that each of the underlying VICAR offenses consisted of the "attempt[] to murder and assault[] [of the victim] with a dangerous weapon," in violation of D.C. statutes and Maryland common law. Retyped Superseding Indictment at 32, 37, 40, 43–45.  Based on these instructions, all the predicate offenses required *both* an assault with a deadly weapon *and* that the assault was part of an attempted murder—implicating *both* § 1959(a)(3) *and* (a)(5), as was properly indicated in the indictment—and it would not have been possible, as defendants belatedly assert, for the jury to have found defendants guilty only of an attempted murder, absent a linked assault.

*United States v. Cooper*, 610 F. Supp. 3d 184, 204–05 (D.D.C. 2022) (analyzing the Maryland state law predicate to a VICAR conviction underlying a § 924(c) conviction).[12]  Thus, the question is whether a D.C. assault with intent to kill while armed ("AWIKWA") and a Maryland assault with intent to murder ("AWIM") qualify as "crimes of violence" under the elements clause, that is, whether they have "as an element the use, attempted use, or threatened use of physical force against the person . . . of another," 18 U.S.C. § 924(c)(3)(A), as is necessary to sustain defendants' remaining § 924(c) convictions.  Furthermore, for the qualifying "use of force" element to be considered "against the person of another," the predicate offense must require a *mens rea* of greater than recklessness, for "[r]eckless conduct is not aimed in that prescribed manner."  *Borden v. United States*, 141 S. Ct. 1817, 1825 (2021).

Maryland AWIM, which is the predicate VICAR offense underlying both Fields's and Johnson's § 924(c) convictions in Count 38, clearly has such an element.  This offense is defined as "an assault upon the victim coupled with an intent to murder," where that intent "is the specific intent to bring about the death of the assault victim."  *United States v. Battle*, 927 F.3d 160, 164 (4th Cir. 2019) (quoting *Hardy v. State*, 482 A.2d 474, 477 (Md. 1984) and citing *Abernathy v. State*, 675 A.2d 115, 116 (Md. 1996)).  By specifically requiring the intent to kill, it requires more than the "conscious[] disregard[ing of] a substantial and unjustifiable risk" of

---

[12]        The D.C. Circuit has not explicitly settled the question of whether the categorical approach should be applied "to the state-crime predicate underlying the VICAR conviction" or to "the VICAR conviction itself," and other courts have followed both methodologies.  *See Sorto*, 2022 WL 558193, at *3 n.7.  The established consensus for Judges on this Court, however, is to opt for the former approach, on the basis that the jury "necessarily found that the defendant violated [the state-crime] predicate to return the VICAR conviction," *id.*, which approach is consistent with "the practice implicitly followed by the D.C. Circuit and explicitly followed by a majority of the circuits to examine the issue," *Mejia*, 2023 WL 2297465, at *6 n.10 (citing *Carson*, 455 F.3d at 367–68).  *See, e.g.*, *Moore v. United States*, No. 16-3715 (RP), 2021 WL 5264270, at *2 (2d Cir. Nov. 12, 2021); *United States v. Mathis*, 932 F.3d 242, 264–65 (4th Cir. 2019); *United States v. Mejia-Quintanilla*, 859 F. App'x 834, 836 (9th Cir. 2021); *United States v. Toki*, 23 F.4th 1277, 1280–81 (10th Cir. 2022); *see also, e.g.*, *United States v. Martin*, 98-cr-329 (RCL), 2021 WL 4989983, at *25 (D.D.C. Oct. 27, 2021) (looking to the state-crime predicate); *Cooper*, 610 F. Supp. 3d at 204–05 (D.D.C. 2022) (same).  Defendants present no persuasive reason to depart from this consensus here.

death or serious injury, which is the very meaning of recklessness, *see* Model Penal Code § 2.02 (Am. L. Inst. 2022), and thus Maryland AWIM remains a viable predicate post-*Borden*. The combination of an assault with that specific intent also necessitates the use of force, as needed to satisfy § 924(c)'s elements clause. As the Fourth Circuit persuasively reasoned in holding that Maryland AWIM satisfies the elements clause of ACCA post-*Johnson*, "it is impossible to intend to cause injury or death [during an assault] without physical force" of some kind, even if that physical force brings about the harm indirectly (*e.g.*, by poisoning the victim's drink). *Battle*, 927 F.3d at 166–67. The D.C. Circuit's decision in *United States v. Haight*, 892 F.3d 1271 (D.C. Cir. 2018), all but compels the same conclusion here. *Haight* considered the Maryland first degree assault statute as a possible ACCA predicate, which statute prohibits (1) intentionally causing or attempting to cause serious physical injury to another, or (2) committing an assault with a firearm. *Id.* at 1281 (citing Md. Code § 3-202(a)). The Circuit reasoned that "the additional elements that convert Maryland second-degree assault into first-degree assault—the use of a firearm or the intention to cause serious physical injury—require the defendant to use, attempt to use, or threaten to use violent force against another person," making it a viable ACCA predicate. *Id.*[13] Given that the element of an intent to cause bodily injury was sufficient to render Maryland first-degree assault a crime of violence under the elements clause, the element of an intent to cause the victim's death must likewise suffice to qualify Maryland AWIM.[14]

---

[13] Defendants attempt to explain away *Haight*'s relevance by incorrectly asserting that Maryland first-degree assault requires both the foregoing intent *and* "an assault with a firearm," while Maryland AWIM is "material[ly] differen[t]" because it "does not require a firearm." *See* Fields *Johnson/Davis* Reply at 6; Johnson Reply at 6. In fact, however, the Maryland first-degree assault statute is satisfied by either an assault committed with the intent to cause serious physical injury to another *or* an assault committed with a firearm, *see* Md. Code § 3-202(a)(1), (2), and thus the Circuit's characterization of the required elements is correct.

[14] *Haight* was later abrogated by *Borden* insofar as the former case held that a different predicate offense qualified as an ACCA predicate despite requiring a *mens rea* of only recklessness, *see Haight*, 892 F.3d at 1281, but *Haight*'s analysis of Maryland AWIM, which, as noted *supra,* is a specific intent crime, does not rest on this logic and remains persuasive.

Likewise, D.C. AWIKWA, which is the predicate VICAR offense underlying Fields's remaining § 924(c) convictions in Counts 34, 40, 43, and 44, satisfies the elements clause. The elements of that offense are (1) an assault with (2) the specific intent to kill, where the assault was committed (3) while armed with or having readily available a firearm or "other dangerous or deadly weapon." *See* D.C. Code. §§ 22-401, 4502(a); *McCray v. United States*, 133 A.3d 205, 228 (D.C. 2016) (citing *Hagans v. United States*, 96 A.3d 1, 42 n.131 (D.C. 2014)). "A specific intent to kill exists when a person acts with the purpose or conscious intention of causing the death of another," *Logan v. United States*, 483 A.2d 664, 671 (D.C. 1984), and thus a mere "conscious disregard of the risk of death or serious injury" does not rise to the level of a specific intent to kill. *Graure v. United States*, 18 A.3d 743, 759 (D.C. 2011). Given that specific intent requirement, D.C. AWIKWA, like Maryland AWIM, cannot be committed recklessly and necessarily satisfies the strictures of *Borden*. *See, e.g.*, *United States v. Martin*, 98-cr-329 (RCL), 2021 WL 4989983, at *25 (D.D.C. Oct. 27, 2021) (reaching the same conclusion). Furthermore, again like Maryland AWIM, committing an assault while specifically intending to kill the victim without the use, attempted use, or threatened use of violent force, is impossible, meaning that this offense remains a crime of violence under § 924(c)'s elements clause.

Fields's and Johnson's VICAR-based § 924(c) convictions, which are predicated on state law offenses that both involve the "use, attempted use, or threatened use" of force against another, *see* 18 U.S.C. § 924(c)(3), therefore remain crimes of violence post-*Johnson* and *Davis*, and will not be vacated.

### B.   Fields's Challenge to His Life Sentences Under *Graham* and *Miller*

At the same time that he challenged, along with Johnson, his § 924(c) convictions in his § 2255 motion based on *Johnson* and *Davis*, Fields also submitted a separate supplemental

§ 2255 motion, this one based on *Graham v. Florida*, 560 U.S. 48 (2010) and *Miller v. Alabama*, 567 U.S. 460 (2012), arguing that those decisions purportedly bar the two mandatory life sentences he received for conduct he committed as a young man.  *See* Fields Supp. *Graham*/*Miller* Mot.  The first life sentence was imposed as to his conviction on Count 3, for RICO conspiracy, in violation of 18 U.S.C. § 1962(d), and the second such sentence was imposed as to his conviction on Count 12, for kidnapping in violation of 18 U.S.C. § 1201(a)(1); both were based on his orchestration of and participation in the armed kidnapping of K.D. (which was captured in the RICO conspiracy conviction as RICO Act 21).  *See* Fields Judgment at 1–2; Retyped Superseding Indictment at 29; Fields Second Sentencing Tr. at 18:9–15, ECF No. 366.  Unlike his *Johnson*/*Davis*-based motion, however, this separate motion does not comply with AEDPA's procedural prerequisites.  In particular, Fields's *Graham/Miller*-based motion was untimely filed more than a year after the purported recognition of the underlying right, and thus this motion must be dismissed.  Further, even if Fields had timely filed the motion, *Graham* and *Miller* do not require the vacatur of the life sentences at issue, which Fields received for offenses committed as a non-juvenile.  Fields's convictions and sentences on Counts 1 and 3 will therefore stand.

### 1.  *Fields's § 2255 Motion Based on* Graham *and* Miller *Was Untimely Filed*

Fields was obligated to file his § 2255 motion within one year from the date on which the newly recognized right defendant seeks to vindicate became available.  28 U.S.C. § 2255(f)(3); *see supra* at Part I.D.  At the latest, then, Fields would have had to file his *Graham/Miller* motion within one year of the Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012)—

*i.e.*, in 2013—yet he did not seek leave from the D.C. Circuit to file this motion until 2016.  *See* Fields Abridged Second Mot. Vacate at 1 & n.1.[15]

Fields argues that, despite this delay, his claim should not be time-barred because he is entitled to equitable tolling.  Fields Supp. *Graham*/*Miller* Mot. at 18–21.  Before AEDPA's limitations period will be equitably tolled, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGugliemo*, 544 U.S. 408, 418 (2005)); *Head v. Wilson*, 792 F.3d 102, 106 (D.C. Cir. 2015). He explains that both requirements are met in this case, because he had attempted to direct his attorney timely to file a § 2255 petition after *Graham* was decided, but the attorney never did despite Fields's numerous attempts to contact him, culminating in Fields initiating disciplinary hearings against the attorney that did not resolve until March 2016.  *See* Fields Supp. *Graham*/*Miller* Mot. at 19.

Equitable tolling must be employed "only sparingly."  *United States v. Cicero*, 214 F.3d 199, 203 (D.C. Cir. 2012) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). "The threshold showing 'necessary to trigger equitable tolling is very high,' . . . because courts should not 'create a loophole . . . contrary to the legislative intent [of AEDPA] of insuring a greater degree of finality.'"  *United States v. Martin*, No. 98-cr-329-RCL, 2022 WL 1618869, at *9 (D.D.C. May 23, 2022) (quoting *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002); *Jones v. United States*, 304 F.3d 1025, 1039 (11th Cir. 2002)).  As such, equitable tolling is rarely permitted as to § 2255 motions.  *See id.*; *United States v. King*, No. 18-cr-318 (JDB), 2022

---

[15]     As discussed *supra*, in Part I.D, the D.C. Circuit subsequently granted Fields's request to file a second or successive § 2255 motion, and in doing so, deemed his *Johnson*-based claims timely, but "expresse[d] no opinion as to the timeliness of petitioner's *Graham* and *Miller* claims," *see* D.C. Cir. Order (Sept. 7, 2016) at 1.

WL 579483, at *9 (D.D.C. Feb. 25, 2022) (finding that equitable tolling of § 2255's limitations period has been granted in "only three cases" in the last ten years).

The record in this case does not reflect the reasonable diligence or extraordinary circumstances that would justify making this another such exceptional case. Fields submits an affidavit in which he describes contacting his attorney about filing a petition based on *Graham* for the first time in 2010, after which the attorney said he would research the issue, followed by a long period of no apparent contact from either side, until the attorney spoke with Fields again in early 2012 about a potential petition. *See* Fields Supp. *Graham*/*Miller* Mot., Ex. A, Fields Aff. at ¶¶ 1–6, ECF No. 483-1. Then, over the next three years, Fields narrates that he attempted to call and write to his attorney "numerous times" to inquire into the status of the petition, but did not hear from him, until he eventually filed a complaint with the District of Columbia Office of Disciplinary Counsel in February 2015. *Id.* ¶¶ 5–6. Fields claims he "settled" those proceedings after the attorney refunded his retainer fee. *Id.* ¶ 6. A letter from the Office of Disciplinary Counsel provided as an attachment to Fields' briefing tells a different story, however. *See id.*, Ex. A, Letter from the Office of Disciplinary Counsel to Thomas Fields ("ODC Letter") at 6–7. Specifically, the Office of Disciplinary Counsel did not find clear and convincing evidence of a violation of the Rules of Professional Conduct and dismissed Fields's complaint in March 2016. *Id.* at 6–7. The letter further sets out the attorney's contrary narration of events: that he investigated Fields's claims prior to the early 2012 phone call, and that on that call he informed Fields that he "did not see a basis to proceed," was unable to further assist him, and offered to return half the retainer at that time. *Id.* at 6.

The Court is in no position to determine which of these conflicting versions of events is more likely to be true based on this meager record, but these circumstances at least make clear

that equitable tolling is not warranted.  As an initial matter, it is far from obvious that Fields's

unspecified number of attempts to contact his attorney over the course of three years, after

apparently being content with a single request in the first two years after *Graham*'s publication,

would amount to reasonable diligence on Fields's part to pursue his rights (especially when the

attorney may have informed Fields that he had ceased working for him at the start of that three

year period).  Even assuming the existence of reasonable diligence, Fields does not demonstrate

that the attorney's conduct rose to the level of an extraordinary circumstance; that is, that it was

"so outrageous or so incompetent as to render it extraordinary."  *United States v. Pollard*, 416

F.3d 48, 56 (D.C. Cir. 2012) (internal quotation omitted).  "That type of misconduct is rare

indeed," and "[c]ourts have routinely held that extraordinary circumstances do not include an

attorney who miscalculates filing deadlines, misrepresents the case's status, becomes

overburdened with cases, or misunderstands governing law."  *Martin*, 2022 WL 1618869, at *9

& nn.8–11 (collecting cases).  Fields's attorney's case files were subpoenaed as part of the

disciplinary investigation and no clear and convincing evidence of a breach of professional

conduct was found, nor evidence to support Fields's version of events over that of the attorney.

ODC Letter at 6–7.  This record simply does not support any finding that the attorney acted

outrageously in not filing what he represented was a baseless motion, and as such the attorney

inaction does not amount to an extraordinary circumstance.

In the absence of equitable tolling, Fields's § 2255 motion based on *Graham* and *Miller*

must be dismissed as untimely.

### 2.     **Graham** *and* **Miller** *Do Not Extend to Fields's Offense Conduct*

Even if not untimely, Fields's § 2255 motion based on *Graham* and *Miller* would fail on

the merits because those cases present no bar to the sentence imposed.  *See, e.g.*, *United States v.*

*Hicks*, 285 F. Supp. 3d 150, 154 (D.D.C. 2018) (briefly addressing why claims would fail on the

merits after concluding they must be dismissed as untimely); *United States v. West*, 314 F. Supp.

3d 223, 232 (D.D.C. 2018) (same).  *Graham* concerned a 16-year-old juvenile who had been

given a life sentence without parole for attempted burglary and attempted armed robbery.  560

U.S. at 53–54.  The Court concluded that such a sentence was impermissible under the Eighth

Amendment, reasoning that that those who commit non-homicide crimes while still "child[ren]

in the eyes of the law" and thus possessed of lessened culpability, cannot be denied all possibility

that they might demonstrate their fitness to rejoin society later in life.  *See id.* at 79.  That

reasoning was extended in *Miller*, in which the Court held that mandatory life sentences without

parole for two 14-year-old children who had committed murder likewise ran afoul of the Eighth

Amendment.  567 U.S. at 479.

   As defendant concedes, at the time of his offense conduct, he was 22 years old, not a

juvenile.  *See* Fields Supp. *Graham*/*Miller* Mot. at 2.  He nonetheless argues that "the

constitutional logic" of *Graham* and *Miller* renders his two life sentences untenable because

those under the age of 25 are, like the juveniles in *Graham* and *Miller*, still developing and

maturing their cognitive capabilities.  *See id.* at 2–3.  Defendant can point to no caselaw that has

opted to extend *Graham* and *Miller* to non-juveniles as old as 22 and, in this Circuit, the holdings

of these cases have never been applied to non-juveniles at all.  *See Hicks*, 285 F. Supp. 3d at 155.

Such treatment is in keeping with the clear weight of authority elsewhere.  *See, e.g.*, *Cruz v.

United States*, 826 Fed. App'x 49, 52 (2d Cir. 2020) (citing *United States v. Sierra*, 933 F.3d 95,

97 (2d Cir. 2019)) (finding life sentences for defendants between ages eighteen and twenty-two

do not violate Eighth Amendment because the "Supreme Court has 'chosen to draw the

constitutional line at the age of 18 for mandatory minimum life sentences'"); *United States v.*

*Roof*, 10 F.4th 314, 378–80 (4th Cir. 2021) (citing *Roper v. Simmons*, 543 U.S. 551, 574 (2005)) (explaining that in the context of categorical limitations under the Eight Amendment, the "Supreme Court chose to draw a line at the generally accepted age of majority, 18, and did so acknowledging that age and culpability were not perfectly linear"); *United States v. Williston*, 862 F.3d 1023, 1040 (10th Cir. 2017) (declining to extend *Miller* to eighteen-year-old defendant because Supreme Court "separate[d] juvenile and adult offenders using the . . . tool of an age cutoff"); *United States v. Marshall*, 736 F.3d 492, 499–500 (6th Cir. 2013) (declining to extend *Miller* to defendant with "mental age of 15 ½" but physical age of 20 because an "immature adult is not a juvenile"); *United States v. Reingold*, 731 F.3d 204, 214–15 (2d Cir. 2013) (overruling district court decision extending *Miller* to 19-year-old defendant's sentence because defendant's relative immaturity was an insufficient substitute for "actual age of minority"); *United States v. Dock*, 541 Fed. App'x 242, 245 (4th Cir. 2013) (declining to extend *Miller* to 20-year-old defendant).

Even assuming that *Graham* and *Miller*'s protections could be extended to defendants several years into legal adulthood as Fields urges, such an extension would not be warranted in this case. Fields earned his life sentences for his leading role in the kidnapping, gangrape, terrorization, and attempted murder of K.D., which acts were planned in advance and meant as punishment for her allegedly snitching on his gang. Unlike the young teenagers' crimes in *Miller* and *Graham*, which occurred in the contexts of what were essentially robberies gone wrong, Fields's actions cannot plausibly be characterized as the type of reckless, impulsive risk-taking that is characteristic of under-developed teenage brains. To the contrary, the offense conduct was premeditated, retaliatory, and taken as part of Fields's leadership role in a long-standing, sophisticated criminal enterprise. Fields cannot claim lessened culpability and

responsibility for this conduct merely because he engaged in this conduct while still a young man.

### C.      A Full Resentencing Hearing Is Unnecessary and Sentence Corrections Suffice

Both defendants contend that if they are successful on just one of their § 2255 claims, "this Court should vacate [defendants'] entire sentence[s] and resentence [them] on all counts." Fields Supp. *Johnson/Davis* Mot. at 27; Johnson Supp. Mot. at 18.  While both defendants are entitled to § 2255 relief on one of their § 924(c) convictions, however, they are not entitled to a full resentencing on all remaining counts.

Under 28 U.S.C. § 2255(b), if a court finds that a defendant's sentence "was not authorized by law or [is] otherwise open to collateral attack," it must "vacate and set the judgment aside."  Thereafter, the court has four choices: to "discharge the prisoner," "resentence" the prisoner, "grant a new trial[,] or correct the sentence," *id.*, with a sentence "correction" representing a more "limited . . . action taken with respect to the original judgment," than full resentencing, *United States v. Palmer*, 854 F.3d 39, 47 (D.C. Cir. 2017).

Defendants argue that a mere sentence correction—one that would vacate their convictions and sentences on Count 37—is insufficient in this case and that a full resentencing is necessary for three reasons.  *See* Fields *Johnson/Davis* Supp. Mot. at 28; Johnson Supp. Mot. at 19.[16]  None of these reasons is persuasive.

---

[16] Johnson, for his part, also uses his Reply brief to air a series of other grievances with his sentence calculation, for example, that he should be resentenced on his first-degree sexual assault convictions now that D.C. has moved away from an indeterminate sentencing system, abolished parole, and created new voluntary sentencing guidelines, and that he should be resentenced on a number of his federal convictions to take into account intervening changes to the federal Guidelines.  *See* Johnson Reply at 18–21.  He also asserts, in the Reply brief's conclusion, that he "likely has" still more "claims under § 404 of the First Step Act and the Sentencing Commission's so-called 'drugs minus two' amendments," which he would be able to bring at a full resentencing, but offers no elaboration as to what those claims are.  *Id.* at 22.  The government, of course, has had no opportunity to respond to these points, which were not previewed in Johnson's opening brief.

First, defendants claim that the process of "stacking" § 924(c) convictions, which was relied upon in calculating their total sentences and has since been eliminated, requires a fresh resentencing.  Fields *Johnson*/*Davis* Supp. Mot. at 28; Johnson Supp. Mot. at 19–20.  Defendants correctly explain that starting in December 2018, the government was no longer able to invoke § 924(c)'s enhanced mandatory consecutive sentences for "second or successive" § 924(c) convictions in the same case in which the first such conviction is obtained.  *See* First Step Act, P.L. 115-391, 132 Stat. 5194, at § 403 (Dec. 21, 2018).  Defendants are incorrect, however, that this change requires a full resentencing.

As to Johnson, after his initial and now void § 924(c) conviction in Count 37, he only received one further § 924(c) conviction (Count 38), which was considered second or successive at the time and subject to the enhanced sentence.  Once his conviction and sentence on Count 37 is vacated, then, Johnson has no second or successive § 924(c) convictions at all, only a single § 924(c) conviction in Count 38.  As Johnson argues, the 20-year enhanced sentence imposed as to his Count 38 conviction must therefore be reduced, as a single § 924(c) conviction should only receive 5 years.  Johnson Supp. Mot. at 20.  That would be equally true either pre- or post-First Step Act, however, and thus "stacking" is not the problem and does not militate towards a full resentencing hearing.  Rather, the issue can be addressed by simply correcting the sentence on Count 38 precisely as Johnson indicates, from 20 years to 5 years, after voiding Count 37.

---

Generally, courts "need not consider" arguments raised for the first time in reply briefs, *see Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008), and reaching those arguments here would be particularly inappropriate, where these assertions in favor of a full resentencing have nothing to do with the convictions and sentences at issue in his § 2255 motion.  *Habeas* comes with a panoply of procedural requirements and limitations that severely restrict the viable collateral challenges a petitioner can bring to his conviction and sentence.  Johnson had the opportunity to bring one such viable challenge to his § 924(c) convictions based on *Johnson* and *Davis*, but as is addressed *infra*, his partial success on the merits of that challenge does not require a full resentencing.  He cannot now shoehorn into his reply briefing his many other arguments regarding his previously unchallenged convictions—which arguments he makes no attempt to establish would be cognizable in *habeas*, let alone in this particular § 2255 motion—in order to obtain a remedy to which his viable collateral challenge does not entitle him.

Fields, by contrast, after vacatur of Count 38, still has five § 924(c) convictions that remain standing. Nonetheless, the fact that four of them were subject to the enhanced sentences due to "stacking," still does not entitle him to resentencing. Besides his § 924(c) counts, he was also sentenced on 23 separate counts,[17] including two for which he earned life sentences of imprisonment, all of which "remain intact." *Smith*, 610 F. Supp. 3d at 208. "In other words, stacking had no practical effect on this defendant's sentence," and this argument is therefore no basis for a full resentencing as opposed to a sentence correction. *Id.* at 207–08.

Next, defendants invoke the sentencing package doctrine to argue that the necessity of partial vacatur of their sentences on some counts should set into motion a full resentencing on all counts. Fields *Johnson/Davis* Supp. Mot. at 28–30; Johnson Supp. Mot. at 20–22. Under the sentencing package doctrine, "at least in some instances, sentences on multiple counts may comprise a 'sentencing package,' so that attacking the sentence on some counts . . . reopens the sentence on the other counts as well." *United States v. Townsend*, 178 F.3d 558, 567 (D.C. Cir. 1999). This doctrine has developed in recognition of the fact that "when a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan, and that if some counts are vacated, the judge should be free to review the efficacy of what remains in light of the original plan." *Id.* (internal quotation omitted). Counts that "are inherently interdependent," including § 924(c) and their predicate offenses, may generate sentences "particularly well suited to be treated as a package," *id.* at 567–68, as do counts where the sentence imposed varies from the guidelines range, since "[t]he amount of downward departure allowed by a sentencing judge is inevitably affected by the total sentence imposed," *Lassiter*, 1

---

[17]     Fields's other 11 counts of conviction were vacated as merged with the remaining 23 counts on which he was sentenced. *See* Fields Judgment at 1.

F.4th at 30 (quoting *Townsend*, 178 F.3d at 569).  Put another way, the sentencing package

doctrine applies when vacatur of a challenged conviction requires revisiting other counts to

"resentence" the defendant, or to "correct" a sentence, since the punishment for the challenged

sentence is not reflected solely in "the punishment for [that] single count," *United States v.*

*Morris*, 116 F.3d 501, 504 (D.C. Cir. 1997), or where "removal of the sentence on one count

draws into question the correctness of the initial aggregate minus the severed element," *United*

*States v. Smith*, 467 F.3d 785, 789 (D.C. Cir. 2006).

Despite the "singularity of the judgments under which" defendants are imprisoned,

*Morris*, 116 F.3d at 504, however, "not every judgment involving multiple convictions presents a

sentencing package in which vacating the sentence on one count unravels the remaining

sentences," *United States v. Palmer*, 854 F.3d 39, 49 (D.C. Cir. 2017) (citing *Smith*, 467 F.3d at

789–90).  When the determinations of multiple sentences are "in no way interdependent," the

sentences may not be reviewed as an aggregate, and the "sentencing package doctrine . . . affords

no apparent basis for any resentencing on the other counts" not challenged.  *Smith*, 467 F.3d at

790.

As this Court has previously recognized, the D.C. Circuit has only applied the sentencing

package doctrine under "narrow circumstances," *United States v. Sumler*, No. 95-154-2 (BAH),

2021 WL 6134594, at *15 (D.D.C. Dec. 28, 2021).  The requisite interdependence of a

defendant's sentences may be gleaned, for example, when sentences imposed on some counts are

modified, either increasing or decreasing in severity, to account for a consecutive mandatory

sentence in the aggregate sentence.  *See, e.g.*, *Lassiter*, 1 F.4th at 26, 29, 31 (affirming, on

resentencing, increased sentence from 240 to 300 months on defendant's kidnapping conviction,

after vacatur of his 18 U.S.C. § 924(c) conviction, and finding the fact defendant had originally

been granted a "33% discount on [his] kidnapping count, a variance especially striking given [his] concededly egregious criminal conduct" to be a strong indicator that the judge had "originally intended a sentencing package" (internal citations and quotation omitted)); *Townsend*, 178 F.3d at 569 (observing that "[t]he amount of downward departure allowed by a sentencing judge is inevitably affected by the total sentence imposed, and the departure allowed on a given count will naturally depend on the departure allowed on other counts," and affirming reopening of entire sentence as a sentencing package, resulting in re-imposition of original sentence, despite vacatur of § 924(c) counts, since "the departure actually imposed on the non-924(c) counts was chosen in light of the term imposed on the § 924(c) counts").  Conversely, the lack of interdependence may also be demonstrated by imposition of separate sentences, without any indicia by the sentencing judge that the aggregate sentence was intended to accommodate any one of those sentences.  *See Smith*, 467 F.3d at 790 (concluding that defendant was not entitled to resentencing on his grouped counts in the wake of vacatur of his 18 U.S.C. § 924(c) conviction, because the sentences on the grouped counts and the § 924(c) violation "were in no way interdependent" and the sentencing court "exercising its discretion, [had] sentenced Smith to several concurrent life terms," declining to depart from the "highest sentence available" under statute, before imposing the vacated consecutive 30-year term under § 924(c)).

Here, two factors make particularly clear that the sentences imposed on the successfully challenged counts in these cases were not so interdependent with the sentences imposed on the remaining counts of conviction that they should be treated as a package.  First, both defendants' sentences were adjusted in 2001 following their direct appeal, and those resentencings adjusted only those charges that had been affected by the legal issues in the appeal, resulting in reduced overall sentences for both defendants.  *See* Johnson/Fields First Sentencing Tr. at 20:15–16,

28:24–25, ECF No. 254 (initially sentencing Fields to life plus 120 years and Johnson to life plus 25 years); Fields Second Sentencing Tr. at 19:4–5 (resentencing Fields to life plus 105 years); Johnson Second Sentencing Tr. at 14:15–17, ECF No. 376 (resentencing Johnson to 49 years and four months).  If their overall sentences had been meant as packages, the resentencing court would likely have modified the minimum term imposed as to other counts in order to preserve the overall scheme.  This is particularly apparent as to Johnson, who originally received greater than a life sentence, but was resentenced to less than fifty years despite still being convicted on five charges of first-degree sexual assault while armed, all of which had available maximum sentences of life.  *See id.* at 14:7–11.  Had the resentencing court wished to preserve Johnson's overall "package" of at least a life sentence, he could have done so.  That he did not is a strong indication that no such package existed, and that the sentences imposed on the various charges were not interdependent.

Second, just as in *Smith*, defendants here were sentenced on several groups of counts of conviction, and the sentencing court dealt first with the groups of substantive offenses that earned defendants their lengthiest periods of incarceration, *see* Johnson Second Sentencing Tr. at 14:7–9 (imposing sentences of 240 months for narcotics conspiracy and VICAR AWIM, 292 months for RICO conspiracy and kidnapping, and 180 months to life for first degree sexual assault while armed); Fields Second Sentencing Tr. at 18:9–19 (imposing two life sentences for RICO conspiracy and kidnapping and multiple 10–20-year sentences for the various counts of first-degree sexual assault, narcotics conspiracy, and VICAR offenses), before moving on to the § 924(c) convictions predicated on some of the foregoing crimes, which sentences were specified as running consecutively to the others, *see* Johnson Second Sentencing Tr. at 14:9–10, 12–17; Fields Second Sentencing Tr. at 18:19–20, 19:1–3.  The sentences were thus explicitly given in

"segments," and to assume "an interconnectedness or interdependence" of those segments would be "to ignore the plain language of the sentencing court." *Smith*, 605 F. Supp. 3d at 26.

In short, no indicia of interdependence between the successfully challenged § 924(c) convictions and any other of their convictions is reflected in defendants' sentences that would support application of the sentencing package doctrine to warrant the alteration of the otherwise final sentences on those remaining convictions. Instead, the appropriate response to the successful challenges is to simply vacate and correct the affected counts.

Finally, defendants argue that they are entitled to new, full resentencings to take into account their "youth" at the time they committed their crimes under the § 3553(a) factors. Fields *Johnson*/*Davis* Supp. Mot. at 30–31; Johnson Supp. Mot. at 22–23. Defendants are correct that if they had been sentenced for the first time today, their age could have been considered under the statutory sentencing factors, while it was not likely to have been considered under the then-mandatory Guidelines at the time of their sentencing. *See* Fields *Johnson*/*Davis* Supp. Mot. at 30; Johnson Supp. Mot. at 22. As Fields acknowledges, however, that intervening change in the law does not entitle non-juvenile federal defendants who were convicted as young men and women to resentencings solely so that their ages can be taken into account. *See* Fields *Johnson*/*Davis* Reply at 26. As discussed at length *supra*, defendants have succeeded in collaterally challenging only one of their counts of conviction, and the basis for that successful challenge has nothing to do with the ages at which they committed their crimes. The identified error can therefore be fully remedied with straightforward sentence corrections, and provides no basis for a full resentencing so that defendants might mount arguments about their relative youth.

**IV.     CONCLUSION**

For the foregoing reasons, defendants' motions to vacate the judgments under 28 U.S.C. § 2255 are granted in part and denied in part.  Fields's and Johnson's motions to vacate based on *Johnson* and *Davis* are granted as to their convictions in Count 37, for use of a firearm during kidnapping under 18 U.S.C. § 924(c), which convictions are vacated along with the corresponding 20-year (as to Fields) and 5-year (as to Johnson) terms of imprisonment.  The sentence imposed on Johnson's conviction in Count 38, which is now his first rather than a second or successive conviction under § 924(c), is therefore adjusted from 20 years to 5 years. The motions based on *Johnson* and *Davis* are otherwise denied, as is Fields's additional § 2255 motion to vacate based on *Graham* and *Miller*.  The sentences imposed on all defendants' other counts of conviction remain final and undisturbed, because the sentencing package doctrine does not require a full resentencing.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: June 27, 2023

_____
BERYL A. HOWELL
U.S. District Court Judge